Eira Angelica Carrillo
5010 N 59th Dr.
Glendale, AZ 85301
(623) 332-3188
Carrilloeira@yahoo.com
*Pro Se Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Eira Angelica Carrillo,<br>Plaintiff,<br>v.<br>James Knapp et al.,<br>Defendants. | No. CV26-04553-PHX-SHD<br><br>**PLAINTIFF'S MOTION TO DIRECT ISSUANCE AND SERVICE OF PROCESS UNDER FED. R. CIV. P. 4(c)(3) AND 28 U.S.C. § 1915(d), AND REQUESTING EXPEDITED CONSIDERATION** |

Plaintiff, Eira Carrillo, moves for an order directing the Clerk to issue process and directing service by the United States Marshals Service, as Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d) require. One hundred thirty-seven days have passed since this Court granted her leave to proceed in forma pauperis and deferred service. No process has issued; no defendant has been served. Through no fault of Plaintiff's, for months now her case has not moved at all.

Plaintiff does not ask this Court to resolve the merits of any claim, and she does not ask the Court to refrain from dismissing any claim that

§ 1915(e)(2) requires it to dismiss. She asks the Court to discharge the separate and independent duty that Rule 4(c)(3) and § 1915(d) impose. The Court may review and serve at once: its power to dismiss under § 1915(e)(2) survives service, so nothing the Court may later decide is lost by serving now. What no statute authorizes is doing neither.

Because the rule that governs issuance is written in mandatory terms, the conditions that trigger it were satisfied on July 1, 2026, and no statute authorizes withholding it. Plaintiff therefore requests that process issue within ten days of this motion's filing.

## BACKGROUND

On June 30, 2026, Plaintiff filed her Complaint, an IFP Application, and a motion that requested, if IFP were granted, "that the Court direct service in the manner authorized by Federal Rule of Civil Procedure 4(c)(3)." (Doc. 7 ¶ 6.) On July 1, the Court granted the IFP Application. (Doc. 10.) It granted Doc. 7 in part, relieved Plaintiff of providing copies to each Defendant, and stated: "To the extent that Carrillo is requesting that the Court direct service, the issue of service will be addressed after the Court has screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)." (*Id.* at 3.) Plaintiff's Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction was denied in the same Order. In doing so, the Court stated that it issued "without further elaboration due to the

emergent nature of Carrillo's request," and that it "will supplement this Order with additional written findings when it screens Carrillo's Complaint." (*Id.* at 2.)

On July 25, Plaintiff filed her First Amended Verified Complaint (Doc. 11), which superseded the original pleading in its entirety. *Royal Canin U.S.A., Inc. v. Wullschleger,* 604 U.S. 22, 35 (2025). Supporting exhibits were filed July 26 (Doc. 12), and on July 28, Plaintiff renewed the request that "any order resolving screening also direct issuance of process and service by the United States Marshals Service pursuant to Rule 4(c)(3) and 28 U.S.C. § 1915(d)." (Doc. 14 at 9.) A declaration and notice followed on August 7. (Docs. 15, 16.) As of the date of this motion, 137 days have elapsed since the July 1 Order, and 113 days since the operative pleading was filed. No order, supplemental findings, or process has issued. The docket confirms zero activity since August 7, 2026.

## ARGUMENT

### I. Rule 4 and § 1915(d) Impose a Mandatory Duty, and Both Triggering Conditions Were Satisfied on July 1, 2026

Federal Rule of Civil Procedure 4 provides:

> At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 …

Fed. R. Civ. P. 4(c)(3). The operative word is "must," and the rule conditions the duty on two facts: a plaintiff's request, and authorization to proceed IFP. Plaintiff requested Marshals service on June 30 (Doc. 7 ¶ 6) and renewed the request on July 28 (Doc. 14 at 9). This Court authorized her to proceed in forma pauperis on July 1 (Doc. 10). Both conditions have been satisfied for more than four months.

Section 1915 states the same duty from the court's side: "The officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d). Neither provision contains a tolling clause, a condition precedent, or any language subordinating the duty to a prior determination by the court.

## II. Congress Authorized "Screening" Once, Named It, Defined Whom it Reaches, and Required That It Be Prompt

The word "screening" appears just once in the in forma pauperis scheme—in the caption of 28 U.S.C. § 1915A. That provision directs:

> The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which *a prisoner* seeks redress from a governmental entity or officer or employee of a governmental entity.

28 U.S.C. § 1915A(a) (emphasis added). Congress unambiguously defined the class to which it applies: "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of

parole, probation, pretrial release, or diversionary program." § 1915A(c). Plaintiff is none of those things.

### A. Congress named the screening function in the enacting text, and did not give the name to Section 1915(e).

The allocation is explicit on the face of the Act that produced both provisions. The language of § 1915(e)(2) on which the July 1 Order's procedure must rest was enacted by § 804 of Pub. L. 104-134, captioned "PROCEEDINGS IN FORMA PAUPERIS." Section 1915A was enacted by the section that immediately follows it, § 805, captioned "JUDICIAL SCREENING." Congress applied the word "screening" to *one section* of the Act, and it is not the section that amended § 1915(e).

Within § 805, Congress captioned each subsection of the statute it was creating:

> (a) SCREENING.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) GROUNDS FOR DISMISSAL.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint …

Pub. L. No. 104-134, § 805(a), 110 Stat. 1321, 1321-75 (1996). Congress therefore distinguished screening from grounds for dismissal within a single statute, in consecutive subsections, by caption: subsection (a) is the

review; subsection (b) is the disposition that follows it. Section 1915(e)(2) is the analogue of subsection (b): it supplies grounds on which a case must be dismissed. Nowhere in § 1915(e) is the analogue of subsection (a); while § 1915(e)(2) authorizes dismissal upon a determination, it neither authorizes any pre-service hold nor supplies any standard by which the duration of such a hold could be measured. *Cf.* 28 U.S.C. § 1915A(a).

The technical amendment confirms the point. Section 805(b) directed one addition to the analysis: "1915A. Screening." That is the *only* entry in the chapter bearing the word. So, § 1915A does not merely authorize dismissal, it also tells the court what it must do on review: "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint…" 28 U.S.C. § 1915A(b). The direction to "identify cognizable claims" is the screening function itself. It commands the court to read the pleading and sort it, to separate what may proceed from what may not.

Section 1915(e)(2) contains no such command. It directs dismissal and nothing else: "the court shall dismiss the case at any time if the court determines that..." There is no instruction to identify cognizable claims, no instruction to sort, and no instruction to do anything at all short of dismissing. A court conducting what it describes as "screening" under § 1915(e)(2) is performing a function that subsection does not assign to it.

### B. The two provisions are triggered differently.

Section 1915A is triggered *by party status*: review is mandatory whenever "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," without regard to anything the court has yet concluded about the complaint. 28 U.S.C. § 1915A(a). Section 1915(e)(2) is triggered *by a judicial determination*: the duty to dismiss attaches "if the court determines" that an enumerated ground exists. 28 U.S.C. § 1915(e)(2). One provision sorts a category of cases before they may proceed, while the other disposes of a case once a finding has been made. Only the first describes a judicial gatekeeping function.

Thus, by its plain text § 1915(e)(2) functions not as an expansion of substantive law, but as a mandatory procedural directive. The statutory mandate that "the court shall dismiss the case at any time"—rather than altering the underlying legal standards—merely reinforces the court's duty of diligence and judicial competence. Here, the mandate serves as a clear legislative command that if a court happens upon any of the enumerated deficiencies in § 1915(e)(2), it is stripped of discretion; the court cannot turn a blind eye; it *must* dismiss the action. The provision does not require courts to "screen" IFP pleadings before "allowing" the case to proceed, because that role belongs *solely* to § 1915A.

### C. Both provisions issued from the same enactment.

Sections 804 and 805 are consecutive sections of the same Act, approved the same day. Pub. L. 104-134, Apr. 26, 1996, 110 Stat. 1321. What Congress did inside section 804 shows what it understood itself to be doing.

*First,* Section 804(a)(2) redesignated the existing subsections (b) through (e) of § 1915 as subsections (c) through (f). Section 804(a)(5) then rewrote redesignated subsection (e). The provision now numbered § 1915(e)(2) is accordingly not new law that the Prison Litigation Reform Act created—it is the rewritten successor of former § 1915(d). The Ninth Circuit has said as much: "Section 1915(e) replaced former section 1915(d), which provided that a district court 'may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'" *Lopez v. Smith,* 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc) (quoting 28 U.S.C. § 1915(d) (1994)); *see Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (a complaint is frivolous "where it lacks an arguable basis either in law or in fact," which encompasses "not only the inarguable legal conclusion, but also the fanciful factual allegation").

What Congress did to that provision was convert "may dismiss" into "shall dismiss" and enlarge the grounds. What it *did not* do is attach a review procedure, a timing rule, or any instruction bearing on when

process issues. And every other operative amendment in section 804 is exclusively limited to prisoners by its terms.[1] In fact, Congress was legislating about prisoners so consistently in section 804 that it wrote the word into the general affidavit requirement itself, amending § 1915(a)(1) to call for "an affidavit that includes a statement of all assets such prisoner possesses." § 804(a)(1)(C).

*Second,* the clause on which the procedure applied here must rest points in the same direction. Section 1915(e)(2) opens: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that..." The opening clause coordinates the dismissal duty with the partial-fee obligations section 804 had just imposed on prisoners in new § 1915(b)—drafted as part of the prisoner fee machinery.

So, Congress had § 1915(e) open before it, amended five parts of § 1915, rewrote the dismissal provision, and then—in the very next section

---

[1] E.g., Section 804(a)(1)(F) added § 1915(a)(2), requiring a six-month trust fund account statement from each prison at which the prisoner was confined; Section 804(a)(3) added § 1915(b), the partial filing fee schedule; Section 804(c) added § 1915(f)(2), governing costs assessed against a prisoner; Section 804(d) added § 1915(g), the three-strikes bar; Section 804(e) added § 1915(h), defining "prisoner" for the whole of § 1915; and Section 804(b) amended the Bankruptcy Code to make such fees nondischargeable by reference to the debtor's "status as a prisoner."

of the same Act—created a separate statute with a screening caption, a review command, a party-status trigger, and a timing mandate. What need would Congress have had to do that if the § 1915(e) it had just rewritten—that same day—already carried a screening duty? Such a construction "would render superfluous an entire provision passed in proximity as part of the *same Act*." *Yates v. United States,* 574 U.S. 528, 543 (2015) (plurality opinion) (emphasis added); *see Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

**D. Where Congress authorized a pre-service hold, it capped the hold.**

Section 1915A(a) requires review "before docketing, if feasible or, in any event, as soon as practicable after docketing." And that limitation is hardly incidental: Congress understood that holding a complaint before process issues suspends the case, and so it wrote a time constraint into the only provision in which it authorized such a hold. This is precisely why § 1915(e)(2) contains no timing requirement: it authorizes no hold. It operates "at any time"—a description of when a dismissal duty may attach, not a license to defer the case while deciding whether it has. The Tenth Circuit has rejected the premise that § 1915(e)(2) imposes

such a duty. *See Buchheit v. Green,* 705 F.3d 1157, 1160–61 (10th Cir. 2012) (discussed in Section III, *infra*).

The "mandatory screening" reading of § 1915(e)(2) also runs headlong into an absurd result: *prisoners are afforded the "as soon as practicable" temporal constraint of § 1915A(a), while non-prisoners are subjected to an indefinitely open-ended screening timeline*. A litigant outside § 1915A cannot be made to bear the burden of § 1915A without receiving its protective constraints. This directly subverts the legislative purpose of the *Prison Litigation* Reform Act's express statutory scheme.

### E. The Ninth Circuit has identified where early screening lives, and it is not § 1915(e).

This is not a question of first impression about where the screening function resides—the Ninth Circuit answered it last year. Reviewing the history of the in forma pauperis statute in *Johnson v. High Desert State Prison,* the court traced the right to proceed in forma pauperis from 1892 forward and observed that:

> [F]rom at least 1892 onwards, our nation ensured the right to proceed IFP, and indeed expanded the right, so that all segments of the population could commence federal lawsuits for free. This changed with the PLRA.

127 F.4th 123, 125–26 (9th Cir. 2025). The court then catalogued what the PLRA changed. Each item on the list is addressed to prisoners, with § 1915(b) being "[o]ne of the provisions designed to curb prisoner

litigation." *Id.* at 126. In describing the rest, the court placed the screening function precisely where its caption places it:

> Other PLRA provisions designed in part to "reduce the quantity and improve the quality of prisoner suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), include mandating administrative exhaustion, 42 U.S.C. § 1997e, prohibiting claims for emotional injury without a prior showing of physical injury, 42 U.S.C. § 1997e(e), early screening, 28 U.S.C. § 1915A, and adding a "three-strikes" penalty for prisoners who have filed "frivolous" litigation, 28 U.S.C. § 1915(g).

*Johnson,* 127 F.4th at 127 n.2. "[E]arly screening" is listed once, its statutory home is given as § 1915A, and it appears among provisions the Ninth Circuit describes as designed to "reduce the quantity" of prisoner suits. The court did not identify § 1915(e) as a screening provision, nor was it described as something the PLRA created for that purpose. Yet the order entered here applies a procedure that circuit authority locates in a statute that does not reach Plaintiff.

The premises on which Congress enacted the PLRA confirm that the classification was deliberate rather than incidental. The Seventh Circuit put them plainly: "Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit." *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir. 1998). The Supreme Court identified the same concern: "a sharp rise in prisoner litigation in the federal courts," to which Congress responded

with "a variety of provisions designed to bring this litigation under control." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006). And the legislative debate was to the same effect.[2] Congress diagnosed a problem defined by the status of the litigant, and it prescribed two remedies calibrated to that status.

The first was money. The Fifth Circuit described it as a change in "the method by which courts process IFP requests for prisoners," under which "courts first examine a prisoner's IFP application and determine the financial status of the prisoner-plaintiff"—a "'front-end' deterrent" responding to "a congressional concern that too many prisoners were filing too many frivolous or repetitive lawsuits." *Gay v. Tex. Dep't of Corr. State Jail Div.,* 117 F.3d 240, 241 (5th Cir. 1997). The Second Circuit found "abundant legislative history to indicate that Congress was endeavoring to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *Leonard v. Lacy,* 88 F.3d 181, 185 (2d Cir. 1996). That remedy

---

[2] *See* 141 Cong. Rec. 26,548 (1995) (statement of Sen. Dole) (cataloguing prisoner suits over insufficient locker space, defective haircuts, invitations to a pizza party, and the service of chunky rather than creamy peanut butter); *id.* at 26,553 (statement of Sen. Hatch) (urging passage to "bring relief to a civil justice system overburdened by frivolous prisoner lawsuits").

is codified at § 1915(b) and applies *only* to prisoners. The second remedy was the gatekeeping function under § 1915A, which also applies *only* to prisoners.

But what really matters here is what Congress *did not* do. It did not extend either remedy to in forma pauperis plaintiffs generally. It left intact the proposition *Johnson* describes as the hundred-year rule—that "all segments of the population could commence federal lawsuits for free," 127 F.4th at 125–26. And it left § 1915(e)(2) as what its text says it is: a command to dismiss when the court determines that a listed ground exists.

A court that suspends a non-prisoner's case pending review on a completely nebulous timeframe *imports the burden of the prisoner remedy onto a litigant Congress defined out of it*, in service of a legislative concern—abundant free time and the absence of filing costs—that simply does not apply.

### F. Inherent authority over the docket does not supply what the statute withholds.

The July 1 Order rests the deferral on screening—Plaintiff has addressed that ground and she anticipates a second one. For it may be said that whatever § 1915(e)(2) does or does not authorize, a district court possesses inherent authority to control the disposition of cases on its own

docket, and that the deferral is an exercise of that authority rather than of the statute. Plaintiff does not dispute this premise: the authority exists, *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936), but it does not reach this order for two independent reasons.

*First*, inherent authority cannot be used to displace an express command. The Supreme Court has stated the limit directly:

> [T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute.

*Dietz v. Bouldin,* 579 U.S. 40, 45 (2016) (citations omitted). Rule 4(c)(3) provides that the court "must" order Marshals service for an IFP plaintiff upon request, and § 1915(d) provides that the officers of the court "shall issue and serve all process." Any inherent power exercised to withhold what those provisions command is foreclosed by *Dietz.*

*Second*, even if inherent authority applied to the circumstances here, a stay entered under it must satisfy standards this order does not meet. *Landis* held that "discretion was abused by a stay of indefinite duration in the absence of a pressing need," 299 U.S. at 255, and framed the governing principle in terms that fit this record:

> [A]n order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done.

*Id.* at 257. The Ninth Circuit also applies that rule. In *Dependable Highway Express, Inc. v. Navigators Insurance Co.,* the court held "that the district court's indefinite *Landis* stay was an abuse of discretion," 498 F.3d 1059, 1070 (9th Cir. 2007), observing that, "[g]enerally, stays should not be indefinite in nature" and that "[t]he order in this case provides no specific deadline for when the stay will terminate." *Id.* at 1066–67; *see Yong v. INS,* 208 F.3d 1116, 1119 (9th Cir. 2000) (an indefinite stay requires a strong showing).

The order entered here has no terminal date and identifies no event whose occurrence would lift it. No party moved for it and no findings support it, yet it has now been in effect 137 days. In the interim, the only external proceeding it could await—this Court's own "screening" review—has produced nothing on the docket. The only way Plaintiff can obtain relief from the order is to expressly move for it—she did this on June 30, on July 28, and now asks a third time here. This is a burden imposed on Plaintiff that *Landis* refuses to tolerate. 299 U.S. at 257.[3]

---

[3] Plaintiff does not contend that this Court lacks authority to manage its docket. Her argument is much narrower: There is no source of authority—statutory under PLRA, or inherent—to support an order that is indefinite in duration, entered without findings, unaccompanied by any deadline, and contrary to an express mandatory rule. If the deferral is defended as a *Landis* stay, it is an abuse of discretion under *Dependable Highway Express*.

## III. Section 1915(e)(2) Only Authorizes Dismissal—The Ninth Circuit Has Declined to Read it More Broadly

Section 1915(e)(2) is addressed to what a court must do when it, "at any time," reaches a conclusion upon specified findings: "the court shall dismiss the case." It is not addressed to what a court may withhold while it has not. And Plaintiff does not dispute that § 1915(e) "applies to all in forma pauperis complaints, not just those filed by prisoners." *Lopez,* 203 F.3d at 1129. Certainly, this Court may dismiss Plaintiff's case at any time if the statutory grounds are met.

Nevertheless, the reasoning by which the en banc court reached that conclusion bears directly on the question presented here. Rejecting a construction of § 1915(e) that would have extended a restriction aimed at prisoner litigation to every IFP plaintiff, the court explained that "Congress has expressed no desire to curb in forma pauperis complaints across the board," and "decline[d] to read the statute so expansively." *Id.* But reading § 1915(e) to permit an indefinite suspension of process is the expansive reading *Lopez* declined to adopt. It takes a restriction Congress enacted solely to address prisoner litigation, strips away the timing limitation Congress attached to it, and applies the remainder to every IFP

---

If it is defended as screening, it is a procedure § 1915A reserves to prisoners. It cannot be both—Plaintiff submits that it is neither.

plaintiff—penalizing all of them, in the en banc court's words, "for the alleged abuses of one group." *Id.*

Plaintiff has located no published decision of the Supreme Court or of the Ninth Circuit holding that § 1915(e)(2) permits a district court to condition an in forma pauperis plaintiff's access to process on the completion of a review the statute neither names, schedules, nor requires. Nor does she find any such decision holding that a court may decline to act while simultaneously withholding the process a mandatory rule requires it to issue. Again, the structure of § 1915 confirms the point: subsection (d) commands that process issue and be served; subsection (e)(2) commands dismissal when its conditions are found. Neither provision authorizes the interval between them, and the power to dismiss early is not a power to decide nothing indefinitely while the indigent plaintiff's case languishes.

The dismissal authority is also continuing, which is why its existence does not justify the hold. Section 1915(e)(2) requires dismissal "at any time" the court makes a qualifying determination. The phrase is a grant of continuing authority, not a limitation: the power does not expire when process issues, and a court that serves a complaint retains its full authority to dismiss it afterward. Review may therefore occur after service in every case in which it does not occur before. Because

nothing the Court may later decide is lost by serving now, service does not depend on the completion of review.

Nor does the dismissal power itself depend on § 1915(e)(2). Section 1915(d) (1994) "authorize[d] courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision." *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa,* 490 U.S. 296, 307–08 (1989). A district court may sua sponte dismiss a frivolous complaint even before service of process has been delivered, "so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke,* 490 U.S. at 324; *see id.* at 325 (describing the characteristics of a frivolous complaint). That authority is decades older than the statute invoked to support the Order,[4] and the power to terminate an IFP case before service is therefore not something the Act created. Necessarily, the PLRA cannot be the source of a power that predates it. What has never existed, before 1996 or after, is a power to do neither thing: to withhold process while declining to rule. And an inherent and continuing power to dismiss is not a power that

[4] *See, e.g., Franklin v. Murphy,* 745 F.2d 1221, 1227 (9th Cir. 1984); *Martin-Trigona v. Stewart,* 691 F.2d 856, 857 (8th Cir.1982) (per curiam); *Collins v. Cundy,* 603 F.2d 825, 827–28 (10th Cir.1979) (per curiam); *Boyce v. Alizaduh,* 595 F.2d 948, 950 (4th Cir.1979); *Watson v. Ault,* 525 F.2d 886, 893 (5th Cir.1976).

must be exercised—or held open—before process issues. The only court of appeals to address the question directly has said so.

In *Buchheit v. Green,* a defendant argued that § 1915(e)(2)(B) required the district court to screen a non-prisoner's complaint before granting in forma pauperis status and authorizing service. 705 F.3d 1157 (10th Cir. 2012). The Tenth Circuit rejected the argument: "Though screening might be a good practice and more efficient, we find that nothing in this language *requires*" it "before granting IFP status." *Id.* at 1160 (explaining that "the language of § 1915(e)(2) does not impose a duty to screen or review *before* service of summons," and "instead it requires a court to dismiss a case filed by an [IFP] litigant *at any time* the court determines that the action or appeal is frivolous or fails to state a claim on which relief may be granted") (cleaned up).

The court also observed that even "the screening requirement of § 1915A(a), which applies only to prisoner complaints against government officials, is not that strict." *Id.* at 1161. And it accepted the consequence: the statute's flexibility holds "even if it sometimes requires defendants … to respond to complaints that may soon be dismissed as without merit." *Id.* (observing that § 1915(e) "simply does not require district courts to review the merits of every claim that comes before them in an

IFP motion," and "declin[ing] to read in such an extensive duty absent statutory language to that effect").

*Buchheit* confronted a defendant demanding screening the statute does not require; this case presents an order imposing it. The premise is the same in both: § 1915(e)(2) contains no pre-service screening mandate for a non-prisoner's complaint. What *Buchheit* leaves to the district court—"the call as to if and when" dismissal review "is appropriate," *id.*—is the timing of *review*, not the suspension of *service*, which Rule 4(c)(3) and § 1915(d) command in mandatory terms.

## IV. For an Indigent Plaintiff, Deferral of Marshals Service Is Not Delay—It Is a Bar to Prosecution

Rule 4(c)(3) is written in mandatory terms for IFP plaintiffs for a reason. A plaintiff who cannot prepay a filing fee cannot fund private service—here, of an eleven-defendant complaint. Marshals service at government expense is the mechanism Congress provided, and for such a plaintiff it is the only mechanism available.

The consequence is that a deferral of Marshals service operates differently depending on the plaintiff's means. A solvent plaintiff faced with the same order retains a process server and then proceeds. Plaintiff cannot: she has no alternative route to service, no date by which the deferral expires, and no act within her power that will end it. For her, "the

issue of service will be addressed after … screen[ing]" is an indefinite suspension of the action, entered without a deadline and without any step she can take to lift it.

## V. No Party Is Prejudiced by Issuance of Process

The usual justification for withholding service—sparing defendants the burden of responding to a complaint that may be dismissed—has little application here. Defendants Bostick and Michaelson, and the Office of the Arizona Attorney General, have held copies of the First Amended Complaint and its supporting papers since July 28, 2026. (Doc. 14, Certification ¶ 2.)

Issuance of process would not surprise them. It would simply give the Court adversary presentation on questions it must resolve in any event, including the abstention and immunity questions the First Amended Complaint addresses at length. (Doc. 11 ¶¶ 128–181.)

## VI. Plaintiff's As-Applied Constitutional Objections

Plaintiff raises the following objections only to preserve them. The statutory question disposes of this motion, and where a statutory ground resolves a case, a court ordinarily should not reach a constitutional one. These objections are stated so that they are preserved for review, and because they bear on the statutory question in the respect identified immediately below.

### A. Another Reason to Adopt the Narrower Construction

Plaintiff does not contend that § 1915(e)(2) is invalid, on its face or otherwise. She contends that one available reading of it—as authority to suspend a case indefinitely, without a deadline, pending a review the provision does not describe—raises constitutional questions that the reading advanced in this motion avoids entirely. That observation is a canon of construction before it is a constitutional claim, and it is therefore an argument for Plaintiff's statutory reading rather than a separate request for relief:

> [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,* 485 U.S. 568, 575 (1988) ("This cardinal principle has … for so long been applied by this Court that it is beyond debate."). Reading § 1915(e)(2) as a dismissal command—which is what its text says, and what Sections I through III establish—raises no constitutional question. Reading it as authority for an unbounded pre-service hold raises the three that follow. So even if the Court instead concludes that the statute is ambiguous on the point, the canon resolves the ambiguity: the narrower construction raises no constitutional question.

### B. The Right of Access to the Courts

The constitutional right of access to the courts is grounded, among other places, in the First Amendment Petition Clause and the Fifth Amendment Due Process Clause. *Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002) (collecting cases). *Harbury* divides access claims into two categories, and Plaintiff's falls in the first. Forward-looking claims are those in which "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. The Court placed within that category the cases in which "the object is an order requiring waiver of a fee to open the courthouse door for desired litigation," including *Boddie v. Connecticut,* 401 U.S. 371, 372 (1971). *Id.* "In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate." *Id.*

That is this motion. Plaintiff does not seek damages for a claim already lost; she asks that a present obstruction be lifted so that an action she has already filed may proceed. The relief she requests is the relief Rule 4(c)(3) already provides for. Plaintiff alleges no improper purpose, and none is required. She does not contend that the July 1 Order was entered to injure her, and nothing in this motion should be read in such a way. The objection is to how the order operates, not to why it was entered.

### C. The Order Operates Differently on, and Only on, Indigent Plaintiffs

Plaintiff does not contend that the Constitution guarantees cost-free access to the federal courts generally—it does not. *United States v. Kras,* 409 U.S. 434 (1973). Her objection does not depend on that proposition, because Congress has already made the relevant judgment. It authorized Plaintiff to proceed in forma pauperis, and it directed that the officers of the court "shall issue and serve all process" for a plaintiff so authorized. 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

The constitutional difficulty arises not from the absence of a subsidy but from the withholding of one Congress conferred—and from the fact that the withholding, as a practical matter, falls on a single class of litigant. A plaintiff able to pay for private service is substantially unaffected by an order deferring Marshals service: she retains a process server and proceeds. Plaintiff cannot. For her, and for her alone, the order is not a deferral in any operative sense—it is a full stop.

That differential operation is the whole of the objection. It requires no finding about anyone's state of mind, and it would be identical if the deferral had been entered for the most conscientious of reasons.

### D. A Suspension Imposed Without Procedure

"A fundamental requirement of due process is 'the opportunity to be heard' … It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965) (citation omitted). The July 1 Order was entered without notice that process would be withheld, without an opportunity to be heard on that question, without findings, without a terminal date, and without any mechanism by which Plaintiff might obtain a ruling. The only procedure available to her is the one she is using: this motion—the third request she has made.

The Supreme Court has recognized that delay may itself ripen into a constitutional violation and has supplied the framework for assessment: "examin[ing] the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 242 (1988); *see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985) (recognizing a point at which unjustified delay in completing a proceeding "would become a constitutional violation").

Applied here: the private interest is the ability to prosecute an action already filed, and the harm occasioned by delay is set out in Section IV. No justification appears on the record, because the Order states none beyond the pendency of a review whose authority is the subject of this motion. And the third factor cannot be weighed at all, because no interim decision has been made, which is precisely the difficulty. Where *Mallen* contemplates a provisional determination followed by a prompt hearing, here, there has been neither.

**VII. Request for Expedited Consideration**

No Defendant has appeared and Plaintiff anticipates no response to this motion. Considering this, and given the issues identified herein, Plaintiff asks the Court to grant expedited review of this filing and issue a ruling within ten days of this filing.

Plaintiff states plainly why she has set out the statutory question at the length she has: the question of whether § 1915(e)(2) authorizes a court to withhold process from a non-prisoner in forma pauperis plaintiff pending review appears to be unaddressed in any published decision of this Circuit. The answer is supplied by the text of §§ 1915(d), 1915(e)(2), and 1915A, by Rule 4(c)(3), and by *Johnson v. High Desert State Prison*. She presents that analysis here, in full, so that this Court has the benefit of it and the opportunity to address the question in the first instance. She

asks only for an immediate ruling on the merits of the statutory question, whichever way it comes out. What she will not do is continue to wait without a decision, a deadline, or any step within her power that would produce one.

## CONCLUSION

For these reasons, the Court should: **(1)** direct the Clerk to issue the summonses presented by Plaintiff under Rule 4(b) as to each Defendant named in the First Amended Complaint; **(2)** direct service by the United States Marshals Service under Rule 4(c)(3) and § 1915(d), Plaintiff having lodged completed USM-285 forms and proposed summonses for each Defendant herewith; **(3)** in the alternative, rule on this motion within ten days, so that Plaintiff may seek review if the Court declines to direct service; and **(4)** grant such further relief in favor of Plaintiff as the Court deems just.

Respectfully submitted November 15, 2026.

/s/ Eira Angelica Carrillo
*Plaintiff Pro Se*